### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JENNIFER CLARICE BLEDSOE BLACK,<br><br>Plaintiff,<br><br>v.<br><br>ISABELLA CASILLAS GUZMAN,<br>Administrator, Small Business<br>Administration,<br><br>Defendant. | Civil Action No. 22-1873 (BAH)<br><br>Judge Beryl A. Howell |

### <u>MEMORANDUM OPINION</u>

Plaintiff Jennifer Clarice Bledsoe Black initiated this suit against defendant Isabella Casillas Guzman, Administrator of the U.S. Small Business Administration ("SBA") in her official capacity, alleging claims of gender discrimination and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e, *et seq.*, retaliation under Family Medical Leave Act of 1993 ("FMLA"), as amended, 29 U.S.C. § 2601, *et seq.*, 5 U.S.C. § 6381, *et seq.*, and disability discrimination under the Americans with Disabilities Act of 1990 ("ADA"), as amended, 42 U.S.C. § 12101, *et seq. See generally* Compl., ECF No. 1; *see also generally* Am. Compl., ECF No. 4 (alleging the same causes of action).  Defendant now seeks dismissal of all claims, *see* Def.'s Mot. to Dismiss, ECF No. 9 ("Def.'s Mot."); *see also* Def.'s Mem. Supp. Mot. to Dismiss, ECF No. 9-1 ("Def.'s Mem."), on grounds that plaintiff lacks a private right of action to assert claims under the ADA and FMLA, and her Title VII claims rely on unexhausted or otherwise non-actionable conduct.  *See* Def.'s Mem. at 1–2.  For the reasons discussed below, defendant's motion is granted.

I.      BACKGROUND

The factual and procedural background of the instant matter is summarized below.

**A. Factual Background**

As set forth in the First Amended Complaint, plaintiff, an African American woman, was employed at SBA from October 2013, until she "involuntarily resigned" in June 2021.  Am. Compl. ¶¶ 9-11, 37.  Most recently, her position was as an Underwriting Marketing Specialist at SBA's Office of Surety Guarantees ("OSG"), where Ernest Lloyd Knott and Peter Charles Gibbs, both male, were her first and second level supervisors, respectively.  *Id.* ¶¶ 13-14.

**1. Plaintiff's Two EEO Complaints**

In April of 2019, plaintiff alleges that Knott and Gibbs told her that she was "not doing her job."  Am. Compl. ¶ 15.  Even after receiving that criticism, plaintiff took on additional work responsibilities for a coworker who was out of the office, prompting, on about June 24, 2019, Knott to raise his voice after learning of probable delays in work due to plaintiff's heightened workload.  *Id.* ¶ 16.  Plaintiff asserts she experienced a panic attack and asked to go home for health reasons, and, after initially granting this request, Knott later denied her sick leave and allegedly yelled, "go back to your desk and do your job, leave denied."  *Id.* (quotation marks omitted).  Around that time, plaintiff also made an accommodation request to get additional days of telework due to an unspecified health issue, which request was also denied.  *Id.* ¶ 18.

On July 30, 2019, a previous notice to terminate Plaintiff's telework agreement was rescinded via a short email.  *Id.* ¶ 19.  Supervisors' concerns about her work productivity apparently persisted, however.  On September 3, 2019, plaintiff says she was issued a letter warning her of unreasonable delays in carrying out her assignments, and, despite plaintiff's report of her supervisors' complaints in April about her work productivity, *id.* ¶ 15, she asserts that the letter was issued without any meeting or other explanation for this warning, *id.* ¶ 20.  Two weeks

later, on September 19, 2019, management directed staff to monitor monthly scripted webinars put on by plaintiff, allegedly causing her distress and performance paralysis. *Id.* ¶ 21. According to plaintiff, only one of her unnamed female coworkers had her webinars similarly monitored, while no male employee was subject to such monitoring. *Id.*

On October 17, 2019, Gibbs terminated plaintiff's established teleworking schedule, explaining that he wanted to "put eyes on [plaintiff]." *Id.* ¶ 22. Plaintiff says that only one other co-worker, also female, had her teleworking agreement similarly terminated and that no male employees had ever had a teleworking agreement terminated. *Id.* ("Indeed, on January 28, 2020, Jermaine Perry, a Management Analyst in Plaintiff's office asked for telework and Mr. Gibbs approved it without any problems. On the other hand, another female co-worker, Shelly Ross, also had her telework agreement terminated by Mr. Gibbs."). Around the same time, plaintiff also received an "unacceptable" performance rating of 1 out of 5, which rating plaintiff contests as baseless, noting her overall performance rating of 4 out of 5 (exceeds expectations) up to that point. *Id.* ¶¶ 15, 24. In the same Fall 2019 period that her supervisors expressed concern about her work productivity, in October and November of 2019, plaintiff was "pulled from" two "work-related event[s]," described as a "Miami event" and a "Maryland business summit," and replaced by a male coworker at the Maryland event. *Id.* ¶ 25. She alleges that a male coworker replaced another female at a work-related event in the past, whereas no male coworker had ever been similarly replaced at a work-related event. *Id.*

On December 6, 2019 and on September 8, 2020, plaintiff filed two complaints with defendant's "Office of Diversity, Inclusion & Civil Rights" ("EEO"), alleging sex-based discrimination and harassment that created a hostile work environment in the first, and discrimination based on retaliation in the second, respectively. *Id.* ¶¶ 4-7. The first EEO

complaint, alleging sex-based discrimination and harassment, which purportedly created a hostile work environment, *id.* ¶¶ 4-5, relied solely on the suspension of her telework schedule and being pulled from the two work events. *Id.* ¶¶ 15-18; *see also* Def.'s Mot. to Dismiss, Ex. 1., *Black v. Guzman*, EEOC No. 570-2020-01718X, Joint Stip. Of Issues (Feb. 25, 2022), ECF No. 9-2 (a joint stipulation filed by plaintiff and SBA, agreeing that the sole alleged bases for discrimination were the suspension of plaintiff's telework schedule and being pulled from a work event).[1]  As support for her second EEO complaint, plaintiff alleged that, beginning in May of 2020, Knott and Gibbs engaged in "verbal abuse" against her that involved use of profanity on at least five instances, including Knott telling plaintiff to "shut the fuck up" in one instance and, in another instance, telling her "you need to find another job." *Id.* ¶ 28.[2]  Plaintiff complained to the Office of Hearing Appeals, the Administrator, the Human Capital Officer and the Deputy Human Capital Officer, the Associate Administrator of the Office of Capital Access, the OIG Office, the Office of Special Counsel, and the EEO Office—all to no avail. *Id.*

### 2. Alleged Conduct after Plaintiff Filed Her Second EEO Complaint

In October of 2020, plaintiff was allegedly told to "provide daily updates of her email-completed assignments," after she took thirteen days to respond to an email, but complains that she was the only person in her position required to provide such updates. *Id.* ¶ 27.  In December 2020, plaintiff received a letter of reprimand for a failure to follow instructions, though she asserts

---

[1]	The First Amended Complaint expressly refers to her administrative EEO complaint and the allegations contained therein, *see* Am. Compl. ¶ 5, and thus may be considered here without converting the instant motion to dismiss into a motion for summary judgment.  *See E.E.O.C. v. St. Francis Xavier Parochial Sch*., 117 F.3d 621, 624 (D.C. Cir. 1997); *see also Hudson v. Children's Nat. Med. Ctr.*, 645 F. Supp. 2d 1, 5 n.5 (D.D.C. 2009) ("[T]he Amended Complaint makes specific reference to the EEO Complaint. . . . Accordingly, the court may consider the EEO Complaint without converting the defendant's motion to dismiss into a motion for summary judgment."); *Marcelus v. Corr. Corp. of Am.*, 540 F. Supp. 2d 231, 235 n.5 (D.D.C. 2008) (same).

[2]	Plaintiff alleges that Knott and Gibbs "were verbally abusive to [her]," Am. Compl. ¶ 28, though she only quotes specific allegedly verbally abusive statements made by Knotts, not Gibbs, *id.*

she was "well in compliance with the office-wide guidelines on timeliness and application processing." *Id.* ¶ 29.   Several months later, on March 23, 2021, plaintiff was subject to a "Performance Improvement Plan" ("PIP") issued by Knott, under the direction of Gibbs, allegedly "with the intent to terminate her in 30 days after completion of the 90-day performance plan." *Id.* ¶ 30.   During the period when the PIP was in place, plaintiff's multiple requests for leave were denied, including requests for administrative leave for an appointment to obtain her second COVID vaccination (denied March 29, 2021), for three (3) hours of sick leave for a doctor's appointment (denied April 26, 2021), for advanced annual leave (denied May 18, 2021), and for FMLA sick leave (denied May 19, 2021). *Id.* ¶¶ 31-36.   Finally, in May of 2021, plaintiff alleges that she was subjected to unspecified non-sexual harassment by Knott during telephone calls and at meetings, thus creating a hostile work environment. *Id.* ¶ 34.   She filed no EEO complaint citing any of this post-September 2020 conduct allegedly occurring after the filing, in September 2020, of her second EEO complaint. *See generally id.*

### B.  Procedural Background

Plaintiff alleges that she "involuntarily resigned" from SBA on June 7, 2021, *id.* ¶ 37, and initiated the instant lawsuit on June 29, 2022, *see* Compl.   The operative First Amended Complaint, filed August 9, 2022, asserts four claims: (1) gender discrimination in the form of disparate treatment, in violation of Title VII (Count I); (2) retaliation for filing her first EEO complaint, in violation of Title VII (Count II); (3) retaliation in the form of denying her sick leave requests, in violation of the FMLA (Count III); and (4) failure to accommodate her reasonable requests to telework, in violation of the ADA (Count IV).[3]   *See generally* Am. Compl.   Defendant's pending motion to dismiss is now ripe for resolution.

---

[3]     Plaintiff is an African American woman, but her Title VII discrimination claim is based solely on her gender. *See* Am. Compl. ¶¶ 39-47.

## II.      LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "[a] plaintiff need not make 'detailed factual allegations,'" but the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *VoteVets Action Fund v. United States Dep't of Veterans Affairs*, 992 F.3d 1097, 1104 (D.C. Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A facially plausible claim pleads facts that are not "'merely consistent with' a defendant's liability" but that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007)); *see also Rudder v. Williams*, 666 F.3d 790, 794 (D.C. Cir. 2012). Consequently, "[a] complaint survives a motion to dismiss even '[i]f there are two alternative explanations, one advanced by [the] defendant and the other advanced by [the] plaintiff, both of which are plausible.'" *VoteVets Action Fund*, 992 F.3d at 1104 (quoting *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1129 (D.C. Cir. 2015)) (alteration in original).

In deciding a motion under Rule 12(b)(6), the court must consider the whole complaint, accepting all factual allegations as true, "even if doubtful in fact." *Twombly*, 550 U.S. at 555; *see also Atchley v. AstraZeneca UK Ltd.*, 22 F.4th 204, 210 (D.C. Cir. 2022). Courts do not, however, "assume the truth of legal conclusions, nor do [they] 'accept inferences that are unsupported by the facts set out in the complaint.'" *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015) (alteration in original) (citation omitted) (quoting *Islamic Am. Relief Agency v. Gonzales*, 477 F.3d 728, 732 (D.C. Cir. 2007)).

## III.      DISCUSSION

Defendant seeks dismissal of plaintiff's FMLA and ADA claims (Counts III and IV) for lack of a cause of action and of the Title VII discrimination and retaliation claims (Counts I and

II) for failure to exhaust administrative remedies and otherwise relying on non-actionable conduct. These arguments are addressed in turn.

### A.  Count III: FMLA Claim

Plaintiff claims defendant violated her FMLA rights by retaliating against her for requesting time off for sick leave.  *See* Am. Compl. ¶¶ 62-72.  Defendant contends that plaintiff lacks a private right of action under the FMLA because she was a federal employee with greater than 12 months of service at the time of her involuntary resignation.  Def.'s Mem. at 5–6. Defendant is right.

The FMLA "entitles eligible employees to take unpaid leave for family and medical reasons." *Gordon v. U.S. Capitol Police*, 778 F.3d 158, 160 (D.C. Cir. 2015).  Employees are covered by either Title I or Title II of the FMLA: "Title I 'governs private sector and federal employees with less than 12 months of service, and Title II pertains to federal employees with more than 12 months of service.'" *Manga v. Carranza*, No. 1:18-CV-00437 (TNM), 2020 WL 1451584, at *5 (D.D.C. Mar. 25, 2020) (quoting *Chandler v. Bernanke*, 531 F. Supp. 2d 193, 201 (D.D.C. 2008)).  While Title I employees have a private right of action under the statute, *see* 29 U.S.C. § 2617(a)(2), "Title II contains no analogous provision," *Manga*, 2020 WL 1451584, at *5 (quoting *Russell v. U.S. Dep't of the Army*, 191 F.3d 1016, 1018 (9th Cir. 1999) (citing 5 U.S.C. §§ 6381–6387)), meaning that Title II plaintiffs do not have a private right of action under the FMLA.  *Id.* at *5–6; *accord Coulibaly v. Blinken*, No. 14-cv-712, 2022 WL 3976806, at *2 n.4 (D.D.C. Sept. 1, 2022) ("Unlike a Title I employee, a federal Title II employee does not have a private right of action under the FMLA."); *Hartzler v. Mayorkas*, No. 20-CV-3802 (GMH), 2022 WL 15419995, at *40 (D.D.C. Oct. 27, 2022) (same); *Chandler v. Bernanke*, 531 F. Supp. 2d 193, 201 (D.D.C. 2008) (same).

As the Fourth Circuit explained, the rationale for interpreting the statute this way is straightforward: "Title II does not contain an express provision for a private right of action to enforce the leave rights there granted[] . . . [and] no implied right of action to remedy violations of Title II exists either." *Mann v. Haigh*, 120 F.3d 34, 37 (4th Cir. 1997); *see also Russell*, 191 F.3d at 1018 ("The absence of express statutory authorization for such suits under Title II would seem to bar [the plaintiff's] FMLA claims because it is axiomatic that suits against the government are barred by sovereign immunity absent an unequivocally expressed waiver.").  While the D.C. Circuit has not opined on this question, every circuit court presented with this issue has held that Title II employees do not have a private right of action under the FMLA.  *See Mann*, 120 F.3d at 37; *Russell*, 191 F.3d at 1019 ("We agree with the Fourth Circuit's reasoning and similarly conclude that the absence of an express waiver of the government's sovereign immunity in Title II of the FMLA bars private suits for violations of its provisions."); *Cavicchi v. Sec'y of Treasury*, No. 04-10451, 2004 WL 4917357, at *6 (11th Cir. Oct. 15, 2004) ("We agree with [the Fourth and Ninth] circuits that the absence of an express authorization precludes [the appellant's] FMLA claim for retaliation[.]"); *Burg v. U.S. Dep't of Health and Human Servs.*, 387 F. App'x 237, 240 (3d Cir. 2010) (same).

Here, plaintiff is undisputedly a Title II employee under the FMLA, and she fails to explain how her FMLA claim can be sustained even though she lacks a private right of action under the statute.  *See* Pl.'s Opp'n to Def.'s Mot to Dismiss at 14–16, ECF No. 12 (failing to respond to defendant's argument that plaintiff lacks a private right of action under the FMLA).  Her FMLA claim must therefore be dismissed.

### B.  Count IV: Plaintiff's ADA Claim

To support her ADA claim, in Count IV, plaintiff alleges that she informed Knott about her disability in June 2019 and defendant nevertheless refused to grant reasonable

accommodations, by denying her telework and sick leave,  Am. Compl. ¶¶ 81-88, thereby violating the ADA, *id*. ¶¶ 77-84. Defendant correctly points out, however, that the ADA specifically excludes "the United States" from the definition of "employer" and that "the Rehabilitation Act, 29 U.S.C. §§ 791, *et seq.*, is the 'exclusive remedy for employment discrimination based on a disability for federal employees,'" Def.'s Mem. at 6–7 (quoting *Raines v. Dep't of Just.*, 424 F. Supp. 2d 60, 64 (D.D.C. 2006)).

Plaintiff concedes this point, Pl.'s Opp'n at 15, and requests an "opportunity to amend her Complaint to explain the nature of the reasonable accommodation she requested," *id*.  The problem with this request to amend her complaint another time is that she has missed her 21-day window to amend her pleading by right, *see* FED. R. CIV. P. 15(a)(1)(B), and she has yet to move for leave to file a second amended complaint, *id*.  To be sure, courts "should freely give leave when justice so requires," FED. R. CIV. P. 15(a)(2), but Rule 15(a)(2) "applies only when the plaintiff actually has moved for leave to amend the complaint; absent a motion, there is nothing to be freely given." *Schmidt v. United States*, 749 F.3d 1064, 1069 (D.C. Cir. 2014) (quoting *Belizan v. Hershon*, 434 F.3d 579, 582 (D.C. Cir. 2006)).  Without a motion for leave to amend, plaintiff's ADA claim must be dismissed.

### C.  Plaintiff's Title VII Claims

Plaintiff asserts Title VII claims for both sex discrimination and for retaliation, both of which are required to be administratively exhausted before serving as a basis for a federal lawsuit. Here, the only allegations that were timely administratively exhausted—(1) the suspension of plaintiff's telework benefits; (2) plaintiff being removed from work events in October and November of 2019; and (3) plaintiff being subjected to profane language in about five incidents in

May 2020—can support her Title VII claims.[4]   As detailed below, based on these allegations, plaintiff's Title VII discrimination and retaliation claims must be dismissed.  First, plaintiff has not plead a valid Title VII discrimination claim because her alleged removal from work-related events were not an adverse employment actions, and she has not sufficiently alleged that her telework benefits were suspended because of her sex.  Second, plaintiff's Title VII retaliation claim fails because being subject to a handful of instances of profane language, even by supervisors, does not satisfy the "materially adverse action" element to support her claim.

### 1.   *Unexhausted Allegations Cannot Support Plaintiff's Title VII Claims.*

Plaintiff's Title VII gender discrimination and retaliation claims are predicated on a variety of allegations in the First Amended Complaint, but plaintiff failed to raise many of those allegations in her two EEO complaints.  Defendant correctly contends that plaintiff's allegations must be limited to those raised in the EEO complaints, and any other allegations are unexhausted. Def.'s Mem. at 8–10.

As a federal employee, plaintiff may file a Title VII action in federal court only after timely exhausting administrative remedies before the EEOC.  *Payne v. Salazar*, 619 F.3d 56, 65 (D.C. Cir. 2010); *accord Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997).  "The EEOC filing requirement" is meant "to give prompt notice to the employer" of the claim and facilitate resolution of the issues.  *Schuler v. PricewaterhouseCoopers, LLP*, 514 F.3d 1365, 1376 (D.C. Cir 2008) (quoting *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 398 (1982)); *see also Bowden*, 106 F.3d at 437 ("Complainants must timely exhaust these administrative remedies before bringing their claims to court."); *Achagzai v. Broad. Bd. of Governors*, 170 F. Supp. 3d 164, 175 (D.D.C.

---

[4]      The First Amended Complaint is unclear whether the profanity allegations relate to either the Title VII discrimination claim or the Title VII retaliation claim, or both, *see* Am. Compl. ¶¶ 39-72, but since plaintiff did not raise the issue of her supervisors use of profane language until her second EEO complaint for retaliation, presumably this allegation is intended as evidentiary support for only the retaliation claim.  *See* Def.'s Mem. at 12 (making this observation).

2016) ("A federal employee who seeks to sue her agency for discrimination under Title VII must . . . timely exhaust administrative remedies before bringing suit.").

Moreover, exhaustion inquiries focus on each discrete discriminatory act that is alleged by an employee. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110–11 (2002). "[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed [administrative] charges." *Id.* at 113. Accordingly, a Title VII complainant "must timely exhaust administrative remedies for *each discrete act alleged*[,]' even if the acts are related." *Mount v. Johnson*, 36 F. Supp. 3d 74, 84 (D.D.C. 2014) (Jackson, K.B., J.) (quoting *Laughlin v. Holder*, 923 F. Supp. 2d 204, 209 (D.D.C. 2013)) (emphasis in original); *accord Heavans v. Dodaro*, No. CV 22-836 (BAH), 2022 WL 17904237, at *6 (D.D.C. Dec. 23, 2022). With respect to timing, a federal employee must alert an EEO counselor of alleged discrimination withing forty-five days of the alleged discriminatory conduct occurring. 29 C.F.R. § 1614.105(a)(1).

Many of the allegations set out in the First Amended Complaint were not included, or exhausted, in the first and second EEO complaints and thus may not support plaintiff's Title VII claims. For example, the first EEO complaint, filed on December 6, 2019, described only the October 17, 2019, suspension of plaintiff's telework schedule, and the October 30, 2019, removal of plaintiff from a work-related event. *See* Am. Compl. ¶¶ 15-18; *see also* Joint Stip. Of Issues. While those incidents were timely raised in an EEO complaint, the following incidents alleged in the First Amended Complaint were not timely raised forty-five days after their occurrence and are missing from this first EEO complaint: the October 2019 "unacceptable" performance rating (*id.* ¶ 24), the monitoring of her webinars in September 2019 (*id.* ¶ 21), the letter of warning for delays

in completing her work (*id.* ¶ 20), and the denial of her sick leave and telework requests for her panic attack in June 2019 (*id.* ¶¶ 16-18).

Plaintiff's second EEO complaint, filed on September 8, 2020, alleged discrimination based on retaliation, citing several instances in which her supervisors used profane language in May of 2020. *See id.* ¶¶ 6, 28. Alleged conduct occurring after September 8, 2020, however, cannot form the basis of plaintiff's Title VII claims because they were not timely raised forty-five days after their occurrence in a EEO complaint, including: the alleged requirement to provide updates of her work in October of 2020 (*id.* ¶ 27), the letter of reprimand for failure to follow instructions in December of 2020 (*id.* ¶ 29), being placed on a PIP in March of 2021 (*id.* ¶ 30), the denials of leave in April and May of 2021 (*id.* ¶¶ 33-36), and her ultimate resignation from the Agency in June of 2021 (*id.* ¶ 37). Given that plaintiff failed to exhaust administrative remedies with respect to any of this above alleged conduct, each of these discrete acts cannot form the basis of plaintiff's Title VII claims.

Plaintiff does not dispute that she failed to raise much of the alleged conduct set out in the Amended Complaint in either EEO complaint. Instead, she asserts that she may seek Title VII redress for "discrete acts of discrimination or retaliation that had not been separately exhausted but were 'sufficiently related' to a properly exhausted claim," "pursuant to the 'continuing violations theory[.]" Pl.'s Opp'n at 7 (quoting *Sussman v. Tanoue*, 39 F. Supp. 2d 13, 21 (D.D.C. 1999)). Alternatively, plaintiff asserts that she "need not exhaust her administrative remedies for the claim based on retaliation when that retaliation claim arises after she made her initial contact with a Counselor." *Id.* (citing *Turner v. District of Columbia*, 383 F. Supp. 2d 157, 178 (D.D.C. 2005)).

Neither of plaintiff's arguments withstands scrutiny.  As defendant points out, plaintiff's arguments rest on abrogated and unpersuasive caselaw.  Def.'s Reply Supp. Mot. to Dismiss at 3–5, ECF No. 14.  First, the Supreme Court explicitly rejected the "continuing violations theory" in *National Railroad Passenger Corporation v. Morgan*, holding that "[e]ach discriminatory act starts a new clock for filing charges alleging that act."  536 U.S. at 113.  Second, the district court case of *Turner v. District of Columbia* is non-binding and is not persuasive.  As explained in *Kennedy v. National Railroad Passenger Corporation*, "[t]he D.C. Circuit in *Payne* [*v. Salazar*, 619 F.3d 56 (D.C. Cir. 2010),] left open the question whether, after *Morgan*, each new discrete discriminatory act must be filed with the EEOC, or whether, according to a pre-*Morgan* line of D.C. Circuit cases, any unexhausted Title VII claim may be eligible for judicial adjudication, without the necessity of separate administrative processing, if it is within the scope of the prior EEO investigation, as 'reasonably related' to the filed charge."  139 F. Supp. 3d 48, 58 (D.D.C. 2015) (Howell, J.).  This Court acknowledged that "[w]hile a minority view on this Court is that the 'reasonably related' test for unexhausted claims, as set out in *Park v. Howard University*, 71 F.3d 904, 907 (D.C. Cir. 1995), survives *Morgan*, the majority view has interpreted *Morgan* to require exhaustion for all discrete acts of retaliation after an administrative charge is filed, regardless of any relationship that exists between those discrete claims and any others."  *Id.* at 59 (quotation marks omitted).  This Court has previously, and does so again here, adopt the majority view.  *See Smith v. Lynch*, 115 F. Supp. 3d 5, 20 (D.D.C. 2015) (Howell, J.) ("This Court declines the invitation and has already held that the plaintiff was required to exhaust her administrative remedies as to the post–2008 incidents, conforming to the majority view.").

Plaintiff offers no persuasive reason why the majority view should be eschewed, *see* Pl.'s Opp'n at 7, nor explains why the discrete acts missing from her EEO complaints were so omitted.

To the extent that plaintiff's Title VII claims are predicated on these unexhausted alleged actions, defendant's motion to dismiss is granted as to those incidents.  Accordingly, the only discrete actions alleged that have been properly exhausted are: (1) the suspension of plaintiff's telework benefits; (2) plaintiff being removed from work events in October and November of 2019; and (3) that she was subject to profane language in about five incidents in May 2020. Whether plaintiff can state a claim for discrimination and retaliation under Title VII based on this conduct is considered next.

### 2.   *Count I: Plaintiff's Title VII Discrimination Claim*

Title VII provides that all "personnel actions affecting employees or applicants for employment . . . shall be made free from any discrimination," 42 U.S.C. § 2000e–16(a), and further prohibits retaliation against employees for opposing an unlawful employment practice, *id.* § 2000e–3(a)l; *see also Walker v. Johnson*, 798 F.3d 1085, 1091 (D.C. Cir. 2015); *Barnes v. Costle*, 561 F.2d 983, 988 (D.C. Cir. 1977) (explaining that Title VII places the same restrictions on federal agencies as it does on private employers).  Under Title VII, "the two essential elements of a discrimination claim are that (i) the plaintiff suffered an adverse employment action (ii) because of the plaintiff's race, color, religion, sex, [or] national origin." *Baloch v. Kempthorne*, 550 F.3d 1191, 1196 (D.C. Cir. 2008); *see also Mawakana v. Bd. of Trustees of Univ. of the D.C.*, 926 F.3d 859, 866 (D.C. Cir. 2019) ("[W]e ask whether . . . a reasonable jury could find [the plaintiff] was denied tenure because of his race[.]") (citing *Baloch*, 550 F.3d at 1196).  "Typically, a materially adverse action in the workplace involves 'a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities,

or a decision causing significant change in benefits.'" *Bridgeforth v. Jewell*, 721 F.3d 661, 663 (D.C. Cir. 2013) (quoting *Taylor v. Small*, 350 F.3d 1286, 1293 (D.C. Cir. 2003).[5]

To find an adverse employment action, the D.C. Circuit, until recently, required courts to conclude that "a reasonable trier of fact could find objectively tangible harm" based on "materially adverse consequences affecting the terms, conditions, or privileges of employment or future employment opportunities." *Forkkio v. Powell*, 306 F.3d 1127, 1131 (D.C. Cir. 2002).   In *Chambers v. District of Columbia*, the D.C. Circuit revisited the requirement of an "objectively tangible harm" to hold that an employee's forced transfer or denial of a transfer request because of that employee's protected status constitutes an adverse employment action, despite a lack of "objectively tangible harm" like economic impact.   35 F.4th 870, 874–75 (D.C. Cir. 2022). Instead, "[o]nce it has been established that an employer has discriminated against an employee with respect to that employee's terms, conditions, or privileges of employment because of a protected characteristic, the analysis is complete."  *Id.*  Despite rejecting the "objectively tangible harm" requirement, *Chambers* did acknowledge that "the phrase ['terms, conditions, or privileges of employment'] is not without limits" because "not everything that happens at a workplace affects an employee's 'terms, conditions, or privileges of employment[,]'" 35 F.4th at 874.  Moreover, actionable retaliation claims "are [still] limited to those where an employer causes 'material adversity,' not 'trivial harms,'" *Wiley v. Glassman*, 511 F.3d 151, 161 (D.C. Cir. 2007) (emphasis omitted) (*quoting Burlington N.*, 548 U.S. at 68), a principle that *Chambers* left undisturbed, *see* 35 F.4th at 876.[6]

---

[5]      Defendant cites to the definition of "personnel actions" in the Civil Service Reform Act ("CSRA"), 5 U.S.C. § 2302(a)(2)(xii).  Defendant, however, does not explain the relevance of § 2302(a)(2)(xii), nor cites any caselaw illuminating that statutory provision's bearing in evaluating whether a plaintiff suffered an adverse employment action for the purpose of Title VII discrimination claims.

[6]      Notwithstanding acknowledgment that trivial harms within the workplace are not actionable under Title VII, the *Chambers* Court expressly declined to reach the question of whether *de minimis* harms could satisfy the new

Plaintiff's allegation that she was "pulled from" two work events in a two-month period over her lengthy employment at SBA, fails to satisfy the *Chambers* standard because she fails to explain how this action affected any terms or conditions of her employment in a manner any different than any regular re-assignment of work among employees.  *See* Am. Compl. ¶ 25. Plaintiff elaborates in opposition briefing that participation in these events were "a part of the essential function of her job" and "affected her compensation, benefits, and likelihood of promotion."  Pl.'s Opp'n at 13.  As support for this otherwise conclusory assertion, she cites to "Ex. A, pp. 624–625," *id.*, which is an exhibit comprised of three pages, a one-page excerpt of the investigative report for plaintiff's first EEO complaint and a two-page excerpt of the transcript of her interview with an EEO counselor on June 16, 2020, that fail to discuss or mention the Miami event and the Maryland business summit, but rather proffer plaintiff's explanations for why she believed her supervisors were "retaliatory," and how her "performance rating" caused her "emotional distress" and affected her "future promotability."  *See generally* Pl.'s Opp'n, Ex. A, ECF No. 12-3.  Merely disagreeing with, or even being upset by, a supervisor's decision simply does not amount to affecting the terms or conditions of employment, particularly with the contextual information provided here that plaintiff's apparent reassignment from attending two events occurred in a limited two-month period over an extensive work history, when her own allegations suggest that her supervisors viewed her work productivity in the same period as subpar.

---

standard, or if the principle *de minimis non curat lex*—the law is not concerned with trifles—remains a part of Title VII, as this principle is generally presumed incorporated in every statute absent an indication to the contrary.  *See id.* at 875 (citing *Wisc. Dep't of Revenue v. William Wrigley, Jr., Co.*, 505 U.S. 214, 231 (1992)).  Defendant argues that, even post-*Chambers*, "trivial, de minimis harms" are not actionable to support Title VII discrimination claims, relegating to this "trivial" category plaintiff's allegations of suspension of telework and being pulled from two work events.  Def.'s Mem. at 11–12.  Plaintiff counters that these harms negatively affected the terms, conditions, or privileges of plaintiff's employment to the same extent that the denial of a transfer request did in *Chambers*, and thus are actionable under the revised *Chambers* standard.  Pl.'s Opp'n at 12–14. Despite the ink spilled by the parties on this issue, delving into whether Title VII incorporates the principle of *de minimis non curat lex* is not necessary here.

Even post-*Chambers*, plaintiff cannot avoid dismissal of her Title VII discrimination claim by baldly stating that the alleged employment action adversely affected the terms, conditions, or privileges of employment without proffering supporting facts or allegations, as judges on this Court have similarly held.  *See, e.g.*, *Garza v. Blinken*, No. 21-CV-02770 (APM), 2023 WL 2239352, at *5 (D.D.C. Feb. 27, 2023) (holding that, under *Chambers*, a "proposed letter of reprimand" issued to plaintiff failed to state a claim for an adverse employment action under Title II because the "complaint [was] devoid of any facts suggesting that the proposed letter affected the terms and conditions of [the plaintiff's] employment," and instead merely "assert[ed] in a conclusory manner that the letter of proposed reprimand had a material effect on the terms and conditions of her employment") (quotation marks omitted); *Heavans*, 2022 WL 17904237, at *8 (holding that plaintiff's allegations that she received "poor performance ratings" and "her reinstatement of a previously discontinued project under a different supervisor . . . did not adversely affect the conditions of [her] employment, though these actions undoubtedly caused tribulations").  In short, plaintiff fails to provide any detail about any impact on her compensation, benefits, and promotion opportunities resulting from being "pulled from" the two events cited and instead merely provides "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," which "do not suffice" at the pleading stage and cannot sustain plaintiff's sex discrimination claim.  *See Iqbal*, 556 U.S. at 678.[7]

---

[7]    Even if plaintiff's arguments in her opposition brief could be accepted as plausible reasons why her being pulled from two work events affected her compensation, benefits, and likelihood of promotion, "only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which" judicial notice may be taken may be considered "[i]n determining whether a complaint fails to state a claim[.]"  *St. Francis Xavier Parochial Sch.*, 117 F.3d at 624; *see also Doe #1 v. Am. Fed'n of Gov't Emps.*, 554 F. Supp. 3d 75, 101 n. 13 (D.D.C. 2021), *reconsideration denied*, No. CV 20-1558 (JDB), 2022 WL 4182223 (D.D.C. Sept. 13, 2022) ("[P]laintiff[] 'may not amend [her] complaint through an opposition brief.'") (quoting *Sai v. Transport. Sec. Admin.*, 326 F.R.D. 31, 33 (D.D.C. 2018)).  The First Amended Complaint fails to allege that plaintiff being removed from these work events at all adversely affected her employment, so these allegations in plaintiff's opposition cannot sustain her Title VII discrimination claim.

By contrast to her allegations about being "pulled from" two work-related events, the alleged suspension of plaintiff's telework benefits amounts to an adverse change to plaintiff's "terms, conditions, or privileges of employment," *Chambers*, 35 F.4th at 876, because the revocation of those benefits forced her to work in person instead of remotely. *See Heavans*, 2022 WL 17904237, at *8 (holding that plaintiff's alleged adverse actions—"the revocation of his flexible work schedule and eventual reassignment to a different department in a non-managerial position"—were "inarguably major changes to the conditions of his employment").[8]  Yet, with respect to the revocation of her telework benefits, plaintiff's claim must nonetheless be dismissed for a different reason: She has failed to plead any facts that would suggest those benefits were terminated because of her gender. *See Walker*, 798 F.3d at 1091 ("To state a prima facie case of discrimination, a plaintiff must allege she is part of a protected class under Title VII, she suffered a cognizable adverse employment action, *and the action gives rise to an inference of discrimination*.") (emphasis added).

One way a plaintiff can show that an adverse employment action she suffered gives rise to "an inference of discrimination" "is by demonstrating that she was treated differently from similarly situated employees who are not part of the protected class." *George v. Leavitt*, 407 F.3d 405, 412 (D.C. Cir. 2005).  Presumably, plaintiff seeks to make this argument by substantiating her claim that her telework benefits were suspended because of her sex with her allegation that the telework agreement for a male "Management Analyst" named "Jermaine Perry" was "approved," while her and a female co-worker's "telework agreement [was] terminated[.]"  *See* Am. Compl.

---

[8]     The cases that defendant relies upon to argue that the suspension of telework benefits are not adverse actions, *see* Def.'s Mem. at 11–12, are inapposite both because these cases were decided pre-*Chambers,* and since they concern the *denial* of a request for changes in work schedule, not an effective *change* in plaintiff's existing work schedule. *See, e.g.*, *Beckham v. Nat'l R.R. Passenger Corp.*, 736 F. Supp. 2d 130, 149 (D.D.C. 2010) ("Being denied the ability to work from home on, at most, three occasions is a minor annoyance, not an adverse action."); *Bright v. Copps*, 828 F. Supp. 2d 130, 148–49 (D.D.C. 2011) ("It is therefore not enough for [the plaintiff] to merely claim that she was denied a desired reassignment to another location.").

¶ 22.  To show that plaintiff and Perry are "similarly situated," however, plaintiff must evince that "all of the relevant aspects of her employment situation were *nearly identical* to those of the male employee."  *Holbrook v. Reno*, 196 F.3d 255, 261 (D.C. Cir. 1999) (emphasis added) (quotation marks omitted).

Critically missing from plaintiff's First Amended Complaint, however, is any allegation that she was similarly situated to Perry.  The only information provided is that Perry was a "Management Analyst," Am. Compl. ¶ 22, while plaintiff, by contrast, was a "Underwriting Marketing Specialist," *id.* ¶ 11, so she and Perry did not occupy the same positions and were likely not performing the same duties.  Failure to show that a similarly situated employee outside the same protected class was treated differently generally warrants dismissal of a Title VII disparate treatment discrimination claim.  *See, e.g.*, *Harris v. Mayorkas*, No. 21-CV-1083 (GMH), 2022 WL 3452316, at *11 (D.D.C. Aug. 18, 2022) (dismissing complaint because the plaintiff "offer[ed] no facts to back [ ] up" her claim that "similarly situated co-workers outside of the her race were not treated in the manner in which she was") (cleaned up); *Beaulieu v. Barr*, No. 15-cv-896, 2019 WL 5579968, at *4 (D.D.C. Oct. 29, 2019) (dismissing Title VII discrimination claim because the plaintiff failed to "identify any 'comparator' employees who were treated differently"); *Budik v. Howard Univ. Hosp.*, 986 F. Supp. 2d 1, 7 (D.D.C. 2013) (similar).  Without any allegations showing that plaintiff and Perry (or another male) performed "nearly identical" duties, *see Holbrook*, 196 F.3d at 261, or any other evidence to show that plaintiff's telework benefits were suspended because of her gender, plaintiff's Title VII discrimination claim must be dismissed.

### 3.  *Count II: Plaintiff's Title VII Retaliation Claim*

"To establish a prima facie case of retaliation, a [Title VII] claimant must show that: (1) she engaged in a statutorily protected activity; (2) she suffered a materially adverse action by [his] employer; and (3) a causal connection existed between the two."  *Wiley*, 511 F.3d at 155 (quotation

19

marks omitted).  Given that the statutorily protected activity at issue here is the filing of plaintiff's first EEO complaint, the only alleged retaliatory conduct that is exhausted and at issue are the five instances of profanity and verbal abuse that plaintiff experienced thereafter.  *See* Am. Compl. ¶ 28.

Defendant does not dispute that plaintiff engaged in a statutorily protected activity by pursuing her first administrative EEO complaint, but she contends that plaintiff's supervisors' use of profanity, "without more, constitute[s] the 'simple lack of good manners that are not actionable as retaliation.'"  Def.'s Mem. at 13 (quoting *Paschal v. District of Columbia*, 65 F. Supp. 3d 172, 180 (D.D.C. 2014).[9]  In other words, defendant argues that being subjected to five instances of profanity and harsh language fails to satisfy the "materially adverse action" element for Title VII retaliation claims.  *Id*. at 16–17.  Defendant is right.

The Supreme Court has made clear that Title VII is not a "general civility code" that makes actionable "the ordinary tribulations of the workplace," *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (quotation marks omitted), and "petty slights, minor annoyances, and simple lack of good manners" are not actionable as retaliation, *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006).  Moreover, the D.C. Circuit has held that even "disproportionate" "profanity-laden yelling" may constitute the garden variety "sporadic verbal altercations or disagreements [that] do not qualify as adverse actions for purposes of retaliation claims." *Baloch v. Kempthorne*, 550 F.3d 1191, 1199 (D.C. Cir. 2008).  Here, the five instances of alleged verbal abuse—which included, for example, Knott telling plaintiff to "shut the fuck up," Am. Compl. ¶ 28 (quotation marks omitted)—while wholly inappropriate, amount to no more than "sporadic verbal

---

[9]     Contrary to defendant's assertion that plaintiff fails to "allege, in fact, anything at all supporting a connection between the alleged profanity and either her gender or her prior action," Def.'s Mem. at 13, "[i]t is well established that evidence of a pattern of antagonism following closely on the heels of protected activity and related to the challenged employment action may establish the causation element of a Title VII plaintiff's" retaliation claim, *Allen v. Johnson*, 795 F.3d 34, 46 (D.C. Cir. 2015).

altercations" and "petty slights" that fail to satisfy the "materially adverse" action element. *See Baloch*, 550 F.3d at 1199; *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 68; *see also Harris*, 2022 WL 3452316, at *11 ("Yelling, rude comments, disparaging remarks, and statements that embarrass a claimant in front of coworkers are, even though uncivil and objectionable, not actionable bases for Title VII retaliation claims."); *Howard v. Kerry*, 85 F. Supp. 3d 428, 435 (D.D.C. 2015) (dismissing Title VII retaliation claim in part because supervisor's yelling "in an intimidating fashion" did not rise to the level of adverse action); *Koch v. Schapiro*, 699 F. Supp. 2d 3, 14 (D.D.C. 2010) (dismissing Title VII retaliation claims premised on a supervisor's episode of yelling at the plaintiff).

Plaintiff makes no attempt to distinguish these precedents, *see* Pl.'s Mot. at 14, and instead argues that Knott's alleged statement to plaintiff, that she "need[s] to find another job," "had a materially adverse effect on the terms of plaintiff's employment." *Id.* (citing *Gaujacq v. EDF, Inc.*, 601 F.3d 565, 578 (D.C. Cir. 2010)). Plaintiff's reliance on *Gaujacq* is unconvincing. In *Gaujacq v. EDF, Inc.*, the D.C. Circuit made clear that "a statement that literally appears to be threatening is not necessarily a materially adverse action," and "[a]n employer's words and other actions must be considered in context to determine whether they would 'dissuade a reasonable worker' from filing a claim and thus result in actionable retaliation." 601 F.3d at 578. Applying that principle to the facts, the *Gaujacq* Court held that the alleged retaliatory statement levied against plaintiff, "[y]our career is dead . . . if you file the claim," was not "a materially adverse action" because "a reasonable worker in [the plaintiff's] position would not have taken [the] brief, fleeting, and unadorned verbal statement as an act or threat of retaliation," especially considering that the company attempted to accommodate plaintiff's employment wishes before and after the comment was made. *Id.*

Under *Gaujacq*, Knott's statement to plaintiff, that she "need[s] to find another job," was merely a "brief, fleeting, and unadorned verbal statement" that cannot support an actionable retaliation claim. *See id.* Knott's statement was not followed by any other changes to plaintiff's employment, nor did Knott again tell plaintiff to find another job or leave employment with the Agency. Standing alone, Knott's statement was just as fleeting as in *Gaujacq*, so it cannot amount to a materially adverse action.

## IV.    CONCLUSION

For the foregoing reasons, plaintiff fails to state a claim upon which relief can be granted as to each of her claims, requiring dismissal. Accordingly, defendant's motion to dismiss is granted. An Order consistent with this Memorandum Opinion will be entered contemporaneously.

Date:  April 24, 2023

_____
BERYL A. HOWELL
U.S. District Court Judge